IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

YULONDA SHERELL LOVE,                §
                                     §
                  Plaintiff,         §
                                     §
V.                                   §          No. 3:16-cv-1973-B-BN
                                     §
CHILD PROTECTIVE SERVICES,           §
ET AL.,                              §
                                     §
                  Defendants.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* civil rights action has been referred to the undersigned United States

magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of

reference from United States District Judge Jane J. Boyle. *See* Dkt. No. 25.

Two of the remaining defendants, Michelle Childers and Robin McGhee

(collectively "Defendants"), employees of Child Protective Services ("CPS"), have moved

for summary judgment as to their affirmative defenses of immunity and qualified

immunity. *See* Dkt. Nos. 36, 37, & 38. On October 12, 2017, the Court denied Plaintiff

Yulonda Love's motion for leave to conduct qualified-immunity-related discovery [Dkt.

No. 40] and set November 13, 2017 as the deadline by which Love was to have

responded to the summary judgment motion and November 28, 2017 as the deadline

for Defendants to file a reply brief, *see* Dkt. No. 41. Neither a response nor a reply was

filed.

The undersigned issues these findings of fact, conclusions of law, and

-1-

recommendation that the Court should grant Defendants' motion for summary judgment and dismiss this action with prejudice.

## Applicable Background

Love's version of events is drawn from her unverified complaint [Dkt. No. 2] and her verified responses to the Court's screening questionnaire [Dkt. No. 8].

She claims that the defendants have violated her Fourth Amendment right to be free from unreasonable seizures by "not allowing [her] to talk to [her minor] child or to see her while they had her on their property" and by "speaking to [her] child and questioning her without [Love's] consent or knowledge." Dkt. No. 8 at 4; *see also* Dkt. No. 2.

In her complaint, Love explains that, on the evening of July 5, 2016, she received a phone call from Defendant Jonathan's Place, a private shelter, and was told to pick up S.L., Love's then-minor daughter. Love states that she was eventually instructed to pick-up S.L. the next morning at the CPS office. After Love arrived at the CPS office, she spoke with Defendant Robin McGhee, identified as a supervisor with CPS.

> [McGhee] asks me to give a statement as well. I refuse. I mention to them my rights as [S.L.]'s parent and I tell them they do not have consent to speak with [S.L.] or hold her in their facility without my permission. I ask them if any accusations were made against me and they stated no they received a phone call. I informed them of their not having custody or conservatorship, a warrant to seize or search my child or even plausible cause....

Dkt. No. 2 at 2. Love further alleges that the defendants refused to release S.L. to her.

Upon initial screening under 28 U.S.C. § 1915(e)(2)(B), the Court dismissed "Love's claims against the Texas Department of Family Protective Services and her

official capacity claims against that state entity's employees as barred by the Eleventh Amendment" and allowed to proceed her claims against Jonathan's Place and Defendants in their individual capacities, liberally construing Love's factual allegations to support causes of action under either the Fourth Amendment or the Fourteenth Amendment to the United States Constitution (or both). Dkt. No. 10, *rec. adopted*, Dkt. No. 11; *see also* Dkt. No. 10 at 3-4 ("'[A] deprivation of custody constitutes a seizure under the Fourth Amendment,' *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 361 (S.D.N.Y. 2012), and the United States Court of Appeals for the Fifth Circuit has held that 'the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances,' *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 429 (5th Cir. 2008). At least in the context of stating a plausible claim, some courts have extended the Fourth Amendment seizure of a minor child to include an in-school interview of that child by school and/or child protective service officials. *See Phillips*, 894 F. Supp. 2d at 361-62 (collecting authority). And, '[i]n this Circuit, it is "well established ... that the Fourth Amendment regulates social workers' civil investigations."' *Thomas v. Tex. Dep't of Family & Protective Servs.*, 427 F. App'x 309, 314 (5th Cir. 2011) (per curiam) (quoting *Gates*, 537 F.3d at 420 (in turn citing *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002)))."); *id.* at 4 ("[I]n light of the Court's obligation to 'liberally construe' *pro se* filings 'with all possible deference,' the undersigned notes that Love 'has a "fundamental liberty interest ... in the care, custody, and management of [her] child,"' *Pate v. Harbers*, No. A-15-CA-375-SS, 2015 WL 4911407, at *9 (W.D. Tex. Aug.

17, 2015) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). 'The Fourteenth Amendment Due Process Clause protects the right to family integrity. This right is held by both the child and the parents.' *Id.* (citations omitted)." (citations omitted)).

Defendants initially responded to the complaint by moving to dismiss the claims asserted against them, under Federal Rule of Civil Procedure 12(b)(6), primarily on the basis that they are entitled to qualified immunity. *See* Dkt. Nos. 22, 23, & 24. The Court denied that motion without prejudice to Defendants' filing an answer asserting that defense and then moving for summary judgment as to that defense. *See* Dkt. No. 32.

## Legal Standards

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'" (quoting *Reichle v. Howards*,

566 U.S. 658, 664 (2012))); *Hanks v. Rogers*, 853 F.3d 738, 746-47 (5th Cir. 2017) ("A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551)).

Review of a motion for summary judgment based on qualified immunity is accomplished in two steps, and, while a court may conduct the required two-step examination in any order, *see Pearson*, 555 U.S. at 236, "deciding the two prongs in order 'is often beneficial,'" *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017) (quoting *Pearson*, 555 U.S. at 236). But, regardless which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court also must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable [official] in the [defendants'] position

that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and brackets omitted)).

As soon as a defendant invokes an entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' ... 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting, respectively, *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*,

457 U.S. at 818; *see also Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see, e.g., Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (observing that "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence" (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003))); *see also Tolan*, 134 S. Ct. at 1863 ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (observing that "[e]ven in the context of qualified immunity, 'the facts alleged' must be '[t]aken in the light most favorable to the party asserting the injury'" (quoting *Tolan*, 134 S. Ct. at 1865)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense.'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)).

"[I]mmunity ... [is] an entitlement distinct from the merits of the case." *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

## Analysis

### I.    <u>Summary Judgement Evidence</u>

While *pro se* litigants like Love "'are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit ... has never allowed *pro se* litigants, or any other type of litigants, to oppose summary judgments by the use of unsworn materials.'" *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2017 WL 876333, at *3 (N.D. Tex. Jan. 31, 2017) (quoting *Rodriguez v. Bexar Cty. Hosp. Dist.*, No. SA-14-CA-861-OG, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 2015) (collecting cases)), *rec. accepted*, 2017 WL 875853 (N.D. Tex. Mar. 3, 2017); *see also Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do." (citation omitted)).

Although Love failed to respond to Defendants' summary judgment motion, her responses to the Court's screening questionnaire are verified. *See* Dkt. No. 8 at 11. As such, in considering the motion for summary judgment, the undersigned has credited these responses as "competent summary-judgment evidence." *Leggett v. Lafayette*, 608 F. App'x 187, 190 (5th Cir. 2015) (per curiam) (citing *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013); *Tolan*, 134 S. Ct. at 1866).

That said, as set out below, Love's evidence does not contradict the key aspects of Defendants' summary-judgment evidence that support their right to qualified

immunity. Defendants' evidence instead, in several, critical respects, "fills in the factual gaps [that Love] leaves open." *Hunter v. James*, No. 3:14-cv-1817-B-BN, 2017 WL 3972004, at \*6 (N.D. Tex. Aug. 2, 2017) (holding that "the Court may consider [the defendant's] competent summary-judgment evidence" because, there, "[o]nce the Court disregards [the plaintiff's] conclusory, speculative, and belief-based assertions[,]" the defendant's "evidence is not inconsistent with [the plaintiff's] version of the facts but merely fills in the factual gaps [the plaintiff] leaves open"), *rec. accepted*, 2017 WL 3911606 (N.D. Tex. Sept. 5, 2017).

Love alleges that Defendants' interviewing S.L. and their refusal to release S.L. to her constituted an unconstitutional seizure and interfered with a constitutionally-protected right to family integrity. But what Love's account of the events leading up to the refusal to release S.L. to her – set out above – leaves out is that, after receiving multiple referrals beginning in late June 2016, CPS had learned that S.L. was homeless, that Love refused to allow her to come home, and that S.L. had made an outcry statement that Love's boyfriend had sexually assaulted her – an assault that, according to S.L., Love blamed on S.L.'s coming on to the boyfriend. *See* Dkt. No. 37-2 at 1-6 ("Childers Decl."), ¶¶ 2-5.

Childers was assigned to investigate the referrals and interviewed S.L. at Jonathan's Place late in the afternoon of July 5. *See id.*, ¶¶ 6 & 7. During that interview, S.L. confirmed the information conveyed through the referrals and told Childers, among other things, that she was afraid to stay with Love if the boyfriend was also present. *See id.*, ¶¶ 7 & 8. Childers also was informed by staff at Jonathan's

Place that S.L. could no longer stay there, but they agreed to house S.L. that night. *See id.*, ¶ 11. Childers spoke to Love that evening and informed her that the shelter did not permit after-hours visitors, which prevented Love from picking up S.L. that evening, and that Love could come to CPS's offices the next day after the shelter transported S.L. there. *See id.*, ¶¶ 11-13. Childers was in court the next morning, *see id.*, ¶ 14, but she had kept her supervisor, McGhee, informed of the conversations with S.L., Love, and staff at Jonathan's Place. *See id.*, ¶¶ 7 & 9; Dkt. No. 37-2 at 7-11 ("McGhee Decl."), ¶ 2-6.

On July 6, McGhee met Love at CPS's offices, at which time Love "refused to be interviewed in any way and refused to provide information about her boyfriend's whereabouts," which left McGhee with the impression "that S.L. might be in immediate danger of sexual assault should she leave with her mother at that time." McGhee Decl., ¶ 7. McGhee conferred with the program director of CPS's specialized unit handling allegations of sexual abuse, and, given everything that CPS knew at that time, it was determined that the specialized unit would complete the investigation and that S.L. would be "forensically interviewed before deciding whether [CPS] should seek custody of S.L." *Id.*, ¶ 9; *see id.*, ¶ 8. After that interview, "S.L. left the building and CPS staff was unable to locate her." *Id.*, ¶ 11; *see also id.*, ¶ 10.

II.    <u>Fourth Amendment</u>

"A person is 'seized' under the Fourth Amendment 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Gates*, 537 F.3d at 431 (quoting *Michigan v. Chesternut*, 486

U.S. 567, 573 (1988)). "'[I]t is well established in this circuit that the Fourth Amendment regulates social workers' civil investigations.'" *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009) (quoting *Gates*, 537 F.3d at 420).

The constitutionality of a seizure is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 397 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting, in turn, *United States v. Place*, 462 U.S. 696, 703 (1983)); internal quotation marks omitted). And *Gates* sets "out the standard for the Fifth Circuit to apply in reviewing seizures of children by government agency workers following abuse or neglect investigations: '[T]he government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances.'" *Id.* (quoting *Gates*, 537 F.3d at 429).

Obviously, neither a court order nor Love's consent was obtained. But the "exigent circumstances" exception – which "*Gates* defined ... to mean 'that, based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home,'" *id.* (quoting *Gates*, 537 F.3d at 429) – does not apply to the seizure of a child outside of the home, *see Gates*, 537 F.3d at 432 ("The Gateses would have us adopt an exigent circumstances standard similar to the one employed when children are seized from their homes for the purposes of taking them into state custody. Such a blanket rule, however, fails to account for the differences in the nature and quality of the intrusion. Temporarily seizing a child from[, applicable there,] a public school in order to interview him in a

safe place is decidedly different than seizing a child from his home for the purpose of removing him from allegedly abusive parents.").

In *Gates*, addressing the reasonableness of the seizure of a child not from his home but at his school, the Fifth Circuit held

> that before a social worker can remove a child from a public school for the purpose of interviewing him in a central location without a court order, the social worker must have a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day. This reasonable belief must be based on first-hand observations of [Texas Department of Protective and Regulatory Services ("TDPRS")] employees, unless the anonymous report shows significant indicia of reliability. As with removing a child from the home, this is a totality of the circumstances analysis that should consider all of the facts of which the social worker is aware. It may be, too, that the child is more comfortable being interviewed at his school than at a strange location, so a social worker should take into account any of the child's express desires.

*Id.* at 433 (footnotes omitted). Under this standard, which is "lower ... than exigent circumstances in that it does not require that the child be in 'imminent danger' of abuse," *id.* at 433 n.22, "TDPRS employees may rely on the investigations of other TDPRS employees in making the decision to remove a child from school," *id.* at 433 n.23.

Also applicable to the seizures alleged here is the portion of *Gates* concerning moving children into a separate room at a private facility – in that case, a YMCA – to facilitate an interview. *See id.* at 434. The Fifth Circuit, in finding no constitutional violation, characterized that intrusion – which "was minor (simply being moved to a separate room) and of short duration" and during which "[t]he children were questioned about the allegations and released" – as "very similar to an investigatory

detention, as approved in *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), in that it was supported by reasonable suspicion and was no more intrusive than necessary." *Id.*

Given these standards — and considering the uncontroverted summary-judgment evidence reflecting that Defendants' possessed a reasonable belief that Love's boyfriend had sexually abused S.L. — Love has not shown that, on July 5, it was unreasonable for Childers to interview S.L. at Jonathan's Place, which was neither S.L.'s home nor her school but a private shelter. Nor has Love shown that, on July 6, it was unreasonable for McGhee to refuse to release S.L. to Love. The alleged seizures of S.L. did not therefore violate the Fourth Amendment. And because Love has not "alleged a violation of a constitutional right," *Charles*, 522 F.3d at 511, both Defendants are entitled to qualified immunity on this claim.

III.  Fourteenth Amendment

To the extent that Love asserts that Defendants violated her right to due process as protected by the Fourteenth Amendment, two separate liberty interests are possibly implicated.

Before parents may deprived of their "'fundamental liberty interest ... in the care, custody, and management of their child,'" "some sort of procedural due process is necessary." *Gates*, 537 F.3d at 434 (quoting *Santosky*, 455 U.S. at 753; citation omitted). "[T]he procedures required for a constitutional search and seizure under the Fourth Amendment are adequate to protect the parents' procedural due process rights and liberty interest in directing the upbringing of their children." *Wernecke*, 591 F.3d at 391 n.7 (citing *Gates*, 537 F.3d at 434-35).

Therefore, to the extent that Love alleges a Fourteenth Amendment violation that mirrors her Fourth Amendment claim – that is, one based on the alleged seizures of S.L. – Love has not shown a constitutional violation, and Defendants are entitled to qualified immunity. *Cf. Pate*, 2015 WL 4911407, at *9 ("Here, Plaintiffs' Fourth Amendment claims and Fourteenth Amendment claims are both based on J.L.C.'s removal. Accordingly, for the same reasons Plaintiffs' Fourth Amendment claims are due to be dismissed, so too are Plaintiffs' Fourteenth Amendment care and custody claims." (footnote omitted)).

"The Fifth Circuit also recognizes that the right to family integrity is a form of liberty protected by the due process clause, and that the right belongs to the child as well as the parents." *Smith v. Tex. Dep't of Family & Protective Servs. Child Protective Servs.*, No. SA-08-CA-940-XR, 2009 WL 2998202, at *13 (W.D. Tex. Sept. 15, 2009) (citing *Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000); citations omitted).

> [G]overnmental interference with the right of family integrity is properly analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and the family's clear interest in privacy. When the facts of a case place it in the center of the continuum where the two interests overlap and create tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity.

*Morris*, 181 F.3d at 671.

As in *Pate*, Love's right to family integrity overlapped with CPS's interest in protecting S.L., and that right is therefore "best characterized as 'nebulous,'" entitling Defendants to qualified immunity. *Pate*, 2015 WL 4911407, at *9.

IV.    <u>Remaining Defendant</u>

Although Defendant Jonathan's Place was never served under 28 U.S.C. § 1915(d), that does not prevent the Court from dismissing that defendant at this time, particularly because Love has failed to plausibly allege that Jonathan's Place is a state actor.

> "Private individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).

*Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017).

Here, Love fails to allege that acts committed by Jonathan's Place are fairly attributable to the State by, for example, "'alleg[ing] specific facts to show' ... that [Jonathan's Place] and [Defendants, as] public actors[,] entered into an agreement to commit an illegal act." *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 774-76 (N.D. Tex. 2014) (quoting *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008)). The uncontroverted summary-judgment evidence presented by Defendants, moreover, supports a conclusion that there was no agreement to commit an illegal act with regard to the alleged seizures of J.L.

Accordingly, Love's claims against Jonathan's Place should be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See, e.g., Moore-Bey v. Cohn*, 69 F. App'x 784, 787-88 (7th Cir. 2003) (per curiam) ("That leaves only the defendants who were never served. In its final order terminating the case, the district court did not explain its rationale for

dismissing the three unserved defendants. But we are confident that the court, after having reviewed Moore-Bey's evidence as to the served defendants, carried out its statutory mandate to dismiss a complaint whenever it becomes apparent to the court that no claim for relief is stated or the case is frivolous." (collected authority omitted)); *cf. Edmon v. Chaney*, 160 F. App'x 437, 439 (5th Cir. 2006) (per curiam) ("A district court must dismiss a complaint that it determines to be frivolous. Service upon the defendants prior to such a dismissal is not required." (citation omitted)).

## Recommendation

The Court should grant Defendants Michelle Childers and Robin McGhee's motion for summary judgment [Dkt. No. 36] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

-16-

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: January 5, 2018

                        DAVID L. HORAN
                        UNITED STATES MAGISTRATE JUDGE